# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MARK B. CUNNINGHAM, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:20-cv-00661 |
| v. | § | Judge Mazzant |
| | § | |
| CONCENTRIX SOLUTIONS | § | |
| CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Pending before the Court is Plaintiff's Motion to Alter or Amend Judgment, Application Requesting Allowance of Attorneys' Fees and Costs and, in the Alternative, Motion for Reconsideration of Final Judgment (Dkt. #164). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This is an employment discrimination case involving Plaintiff Mark B. Cunningham and Defendant Concentrix Solutions Corporation. On September 1, 2020, Plaintiff filed this action alleging retaliation, race, sex, and age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act (the "ADEA") because Defendant did not promote him to Chief Human Resources Officer and terminated his employment (Dkt. #15). Plaintiff claims Defendant did not hire him for the position despite his superior experience and qualifications over the other candidate (Dkt. #15).

On August 29, 2022, the trial began, and on September 2, 2022, the jury returned a verdict (Dkt. #157). The jury found for Defendant on the race discrimination claim, age discrimination

claim, and retaliation claims (Dkt. #157).  The jury found for Plaintiff on the gender discrimination claim (Dkt. #157).  However, the jury also found that Defendant would have made the same decision regardless of Plaintiff's gender (Dkt. #157).  Thus, on September 13, 2022, the Court entered a take-nothing final judgment in favor of Defendant (Dkt. #163).

On September 21, 2022, Plaintiff filed a motion seeking to alter or amend the judgment and requesting attorneys' fees (Dkt. #164).  On October 5, 2022, Defendant responded (Dkt. #165).

## LEGAL STANDARD

### I.    Reconsideration of Final Judgment

A motion seeking reconsideration may be construed under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances.   A motion seeking reconsideration of a final judgment that is filed within 28 days of the judgment is considered under Rule 59(e).  *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *Milazzo v. Young*, No. 6:11-CV-350-JKG, 2012 WL 1867099, at *1 (E.D. Tex. May 21, 2012).  Such a motion "'calls into question the correctness of a judgment.'"  *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).  Here, Plaintiff filed his Motion to Alter or Amend Judgment, Application Requesting Allowance of Attorneys' Fees and Costs and, in the Alternative, Motion for Reconsideration of Final Judgment (Dkt. #164) within 28 days, accordingly, the Court analyzes the motion under Rule 59(e).

A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).  "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'"  *Id*. (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir.

1989)).  "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Milazzo*, 2012 WL 1867099, at *1 (citing *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 567 (5th Cir. 2003)).  "Altering, amending, or reconsidering a judgment is an extraordinary remedy that courts should use sparingly." *Id.* (citing *Templet*, 367 F.3d at 479).

## II.    Attorneys' Fees

Title VII permits a court to award attorneys' fees to a prevailing plaintiff.  42 U.S.C. § 2000e–5(g)(2)(B)(i); *Garcia v. City of Houston*, 201 F.3d 672 (5th Cir. 2000).  "This Court uses the 'lodestar' method to calculate attorney's fees." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)); *Saizan v. Delta Concrete Prod. Co*., 448 F.3d 795, 799 (5th Cir. 2006)).  "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Id.* (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co*., 685 F.3d 486, 490 (5th Cir. 2012)).  There is a strong presumption of the reasonableness of the lodestar amount. *Perdue v. Kenny A*., 599 U.S. 542, 552 (2010); *Saizan*, 448 F.3d at 800.  "However, after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on 'the relative weights of the twelve factors set forth in *Johnson*." *Id.*[1]  Many of the *Johnson* factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.[2] *Pennsylvania v. Del. Valley Citizens' Council*

---

[1] The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-18 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1988).

[2] The "novelty and complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount. *Pennsylvania*, 478 U.S. at 565.

*for Clean Air*, 478 U.S. 546, 564 (1986); *Camargo v. Trammell Crow Int. Co.*, 318 F. Supp. 2d 448, 450 (E.D. Tex. 2004).  "The lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black*, 732 F.3d at 502 (citation omitted).

## ANALYSIS

The parties dispute whether the Court should award Plaintiff attorneys' fees.  Plaintiff argues that the Court should grant attorneys' fees proportional to Plaintiff's success in proving that an impermissible factor tainted Defendant's hiring decision.  Plaintiff brought five claims under Title VII and the ADEA, alleging that Defendant discriminated against Plaintiff based on his gender, age, and race and that Defendant retaliated against Plaintiff when he complained about the discrimination.  The jury found that Defendant was motivated, in part, by gender when it failed to select him as the new Chief Human Resources Officer (Dkt. #157).  However, the jury also found that Defendant would have made the same decision regardless of Plaintiff's gender (Dkt. #157). According to Plaintiff, based on the jury's findings, the *Sheppard* factors, and the *Gudenkauf* test, the Court should award Plaintiff attorneys' fees.  Defendant disagrees.

According to Defendant, Plaintiff's limited success does not warrant an award of attorneys' fees.  Defendant argues that the *Gudenkauf* test is inapplicable because the Fifth Circuit rejected it.  Defendant further argues that the *Sheppard* factors do not weigh in favor of awarding attorneys' fees.  Furthermore, Defendant argues that, even if the Court decides to award Plaintiff attorneys' fees, the information supplied by Plaintiff is insufficient to determine how much the Court should award Plaintiff.  According to Defendant, Plaintiff did not provide detailed information relating to how the billed hours were spent and failed to segregate the fees.  Thus, according to Defendant,

4

Plaintiff's request for fees and costs are unreasonable, and the Court cannot award Plaintiff attorneys' fees or costs.

The Court will first determine whether the *Sheppard* factors apply or whether the *Gudenkauf* test applies. Then, the Court will determine whether it will use its discretion to award fees, using the applicable law. Finally, if the Court does award fees and costs, the Court will determine what amount of fees and costs are reasonable.

## I.   The Court May Award Attorney's Fees and Costs Under Title VII

Title VII of the Civil Rights Act of 1964 allows a court to grant plaintiffs attorneys' fees and costs demonstrated to be solely attributable to pursuing a § 2000e-2(m) claim. 42 U.S.C. § 2000e–5(g)(2)(B)(i). Under § 2000e–5(g)(2)(B)(i), a plaintiff may recover fees and costs when the plaintiff proves a violation under § 2000e-2(m) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor. *Id.* However, a trial court only has the discretion to award fees to the extent Plaintiff can show the fees are attributable solely to the claim on which Plaintiff was successful. *See id.* That is, attorneys' fees are only available for those claims on which Plaintiff proved an unlawful consideration was a motivating factor in the employment decision.

The permissive language found in § 2000e–5(g)(2)(B)(i)—"the court *may* grant . . . attorneys' fees and costs"—created a circuit split. *Id.* (emphasis added); *see also Sheppard v. Riverview Nursing Ctr.*, 88 F.3d 1332 (4th Cir. 1996); *Gudenkauf v. Stauffer Commc'ns*, 158 F.3d 1074 (10th Cir. 1998). Some circuit courts, led by the Fourth Circuit, hold that courts should award attorneys' fees after considering the circumstances of the case and proportional to the plaintiff's success. *Sheppard*, 88 F.3d at 1336, 1339 (promulgating the *Sheppard* factors using the rationale in the Supreme Court's holding in *Farrar v. Hobby*, 506 U.S. 103 (1992)); *see also Norris*

*v. Sysco Corp.*, 191 F.3d 1043, 1051–52 (9th Cir. 1999) (applying the *Sheppard* factors, but acknowledging that "they are neither comprehensive, nor exclusive, nor required in every case"); *Akrabawi v. Carnes Co.*, 152 F.3d 688, 695–96 (7th Cir. 1998) (agreeing with the Fourth Circuit's analysis of the statute in *Sheppard* and adopting the factors as a starting point); *Canup v. Chipman–Union*, 123 F.3d 1440, 1442–43 (11th Cir. 1997) (adopting the *Sheppard* approach).  Other circuits, namely the Tenth Circuit, courts should always award attorneys' fees unless special circumstances exist.  *Gudenkauf*, 158 F.3d at 1081 (holding that it was inappropriate to apply *Farrar*, as *Sheppard* did, to Title VII cases in a manner which denies all but nominal fee recoveries on the basis that a plaintiff fails to recover damages or injunctive relief.).  Finally, the Fifth Circuit has discussed the split but refrained from explicitly adopting either approach.  *Garcia*, 201 F.3d at 677–79.

### A. The Court will Consider *Sheppard* and *Gudenkauf* in Determining if the Court Should Award Fees

The Fifth Circuit addressed the circuit split in *Garcia*, 201 F.3d at 677–79.  As an initial matter, the Fifth Circuit acknowledged that all circuits agree that, in a mixed-motive case, whether a district court should award attorneys' fees is a matter of discretion.  *Garcia*, 201 F.3d at 677–79.  However, it is unclear from the Fifth Circuit's holding if the Fifth Circuit was adopting *Sheppard* or *Gudenkauf*.  *See Robinson v. Ouachita Par. Sch. Bd.*, No. 03-cv-1374, 2005 WL 1923850, at *4 (W.D. La. Aug. 10, 2005).  The Fifth Circuit discussed both cases and applied both to the facts of its case but did not explicitly adopt either test.  Accordingly, this Court will do the same.  Notably, regardless of whether the Court applies the *Sheppard* factors or instead uses the *Gudenkauf* method for analyzing fees, the result here is the same: The Court will award Plaintiff attorneys' fees.  First, though, the Court will lay out the methods and reasoning in both *Sheppard* and *Gudenkauf*.

Beginning with *Sheppard*, the Fourth Circuit determined that courts should award attorneys' fees proportional to a plaintiff's success. *Sheppard*, 88 F.3d at 1336. The Fourth Circuit based this conclusion on the Supreme Court's holding in *Farrar*. 506 U.S. 103 (1992). In *Farrar*, the Supreme Court analyzed attorneys' fees awards as they apply to § 1988 cases. *Id.* According to the Supreme Court, attorneys' fees should be awarded to a plaintiff only when he or she is a "prevailing party." *Id.* at 109. In a civil rights case, a plaintiff is considered a prevailing party when he or she obtains at least *some relief* on the merits. *Id.* at 111.

Furthermore, in *Farrar*, the Supreme Court noted that the reasonableness of a fee award depends on the degree of the plaintiff's overall success. *Id.* at 114. With this in mind, the Fourth Circuit held that courts should "consider the relationship between the fees and the degree of the plaintiff's success" and apply a modified version of the *Farrar* proportionality considerations. *See Sheppard*, 88 F.3d at 1336, 1339 (citing *Farrar*, 506 U.S. at 114–16). The Fourth Circuit identified three non-exhaustive factors that courts should consider when awarding fees in a mixed-motive case:

> (1) reasons why injunctive relief was or was not granted, (2) the public purposes served by resolving the dispute, and (3) whether the mixed-motive case demonstrated a "widespread or intolerable" animus on the part of a defendant, or were the employer's actions justified by the plaintiff's behavior.

*Id.* After promulgating these factors, the Fourth Circuit expressly rejected the idea that district courts should automatically award the full lodestar amount of a plaintiff's attorneys' fees and costs. *See id.* at 1339. According to the Fourth Circuit, while "the 'workplace is no place for discrimination,' [the Fourth Circuit] simply believe[s] that district courts may consider the circumstances of each case in fashioning any award of attorney's fees." *Id.* In *Gudenkauf*, the Tenth Circuit took a different approach.

The Tenth Circuit disagreed with the Fourth Circuit to the extent that the Fourth Circuit held an attorneys' fees award should be based, in part, on whether a plaintiff recovered any monetary damages or obtained injunctive relief.  *Gudenkauf*, 158 F.3d at 1077–81.  Instead, the Tenth Circuit held that district court should award attorneys' fees in all but special circumstances. *Id.* at 1081.  According to the Tenth Circuit, a mixed-motive case "constitutes a victory on a significant legal issue that furthers a public goal, a goal that is advanced notwithstanding the fact that a plaintiff recovers no damages."  *Id.*  Moreover, an attorneys' "fee award is the only form of redress available to make the victim whole for vindicating society's interest in a discrimination-free workplace."  *Id.* at 1082.  Thus, the Tenth Circuit adopted the approach used in *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400 (1968) rather than the *Farrar* approach.

In *Newman*, the Supreme Court interpreted an attorneys' fees statute in Title II of the Civil Rights Act of 1964.  There, the Supreme Court directed district courts to assess whether special circumstances would make an award of fees and costs unjust.  *Id.* at 402.  If no special circumstances exist, a district court should award attorneys' fees and costs.  *Id.*  Applying that logic, the Tenth Circuit held that losing on a claim because of the same-decision affirmative defense in a "mixed-motive case is not a special circumstance that would make an award of fees unjust."  *Gudenkauf*, 158 F.3d at 1082.  Nonetheless, even after holding that attorneys' fees should be awarded under § 2000e–5(g)(2)(B)(i) in all but special circumstances, the Tenth Circuit still affirmed the district court's decision to reduce the lodestar fee amount by half based on the plaintiff's degree of success.  *Id.* at 1085 ("[A]ll mixed-motive claims, like all other claims of discrimination, are not created equal and not every proven mixed-motive claim warrants an award based on the full extent of attorney time devoted to it.").

The Court would be remiss not to also point out that the district court opinion affirmed by the Fifth Circuit in *Garcia*, concluded that, in reality, *Gudenkauf* and *Sheppard* do not often require different results.  The district court determined that, while "the Tenth Circuit's theoretical approach to awarding attorney's fees differs to a degree from the *Sheppard* line of cases . . . the Tenth Circuit approach ultimately reflects a difference without a distinction."  *Garcia v. City of Houston*, No. 4:96-cv-00783, at 14 (S.D. Tex. Oct. 30, 1998).  This Court agrees.  Although the Tenth Circuit's approach essentially presumes a district court should award at least some attorneys' fees, it still requires a proportionality inquiry based on the relative success of the plaintiff.  Thus, the Court will use its discretion to determine whether it should award fees, applying the *Sheppard* factors, heavily weighing the Plaintiff's role in ending unlawful discrimination, and recognizing that, under *Gudenkauf*, it should award fees in all but special circumstances.  *See Garcia*, 201 F.3d at 67; *see also Sheppard*, 88 F.3d at 1336, 1339; *Gudenkauf*, 158 F.3d at 1081–82.  The Court will begin its analysis with the *Sheppard* factors.

### B. The *Sheppard* Factors Weigh in Favor of the Court Awarding Fees and Costs

According to *Sheppard*, there are three factors that a court should consider when awarding fees in a mixed-motive case:

> (1) reasons why injunctive relief was or was not granted, (2) the public purposes served by resolving the dispute, and (3) whether the mixed-motive case demonstrated a "widespread or intolerable" animus on the part of a defendant, or were the employer's actions justified by the plaintiff's behavior.

*Sheppard*, 88 F.3d at 1336.  The Court will address each factor in turn.

First, the Court did not grant Plaintiff an injunction because Plaintiff did not request one. In Plaintiff's motion, Plaintiff notes that "although Plaintiff requested an injunction in his complaint, the Court did not issue one; nor was there a reason for the failure to issue one" (Dkt. #164 at p. 7).  To be sure, Plaintiff pleaded for injunctive relief (Dkt. #64 at p. 22).  During

trial, though, Plaintiff failed to seek an injunction from the Court.  Likewise, Plaintiff failed to request an injunction in his Rule 50(a) motion.  Even if Plaintiff had requested injunctive relief, however, it is unlikely the Court would have granted it.

This case involves one incident with a single employee.  And, as the Court discusses more fully later in this Order, there was no evidence of a widespread pattern of discrimination on the part of Defendant.  Additionally, Plaintiff is no longer an employee of Defendant, and evidence at trial showed that Defendant believed the chosen candidate qualified for the job.  *Robinson*, 2005 WL 1923850, at *4 (holding that an injunction was inappropriate when the qualifications of the plaintiff and the successful candidate were comparable).  There is no evidence to support that Defendant discriminated against someone based on gender in the past.  Nor is there evidence to support that Defendant will discriminate against someone based on their gender again.  Without evidence indicating a common practice or pattern by Defendant of violating employee rights or evidence indicating that Defendant would discriminate against Plaintiff again in the future, an injunction would have been inappropriate.  *Sourgoutsis v. U.S. Capitol Police*, No. 16-CV-1096, 2021 WL 3053388, at *7 (D.D.C. July 20, 2021) ("the Court also denied [the plaintiff's] motion for a permanent injunction, because [the plaintiff] had neither presented evidence of widespread discrimination at [the company], nor shown that there was a reasonable likelihood that [the company] would discriminate against her in the future.").  Accordingly, in this case, there was no continuing harm, and the Court would not have granted a permanent injunction.

Next, Plaintiff's case served a public purpose.  According to Plaintiff, because his suit served the public purpose of proving that gender was a consideration in Defendant not selecting him for the Chief Human Resources Officer position, the second factor is satisfied.  While Defendant does not dispute that by exposing its expression of a preference for hiring a woman

Defendant's case serves a public purpose, Defendant argues that Plaintiff ignores that the advancement of women into executive positions in corporate America also serves a public purpose. Although the Court agrees that promoting the advancement of women in the workplace and executive positions is an important social goal, Defendant's social goal does not negate Plaintiff's. Nor does the promotion of a particular social goal excuse discrimination. To be sure, no matter how important it is to support women in the workplace, that does not permit Defendant to discriminate against Plaintiff or anyone else based on his or her gender. To that end, Plaintiff's suit serves a public purpose because it exposed Defendant's unlawful use of gender as a factor in its hiring decision. If Plaintiff had not brought this lawsuit, Defendant would not have been held accountable for considering an impermissible factor when selecting the Chief Human Resources Officer role. This factor weighs heavily in favor of awarding attorneys' fees. *See Garcia*, 201 F.3d at 679.

Third, the Court must consider whether there was "widespread or intolerable" animus on the part of Defendant or whether Plaintiff's behavior justified Defendant's actions. That is, attorneys' fees are appropriate to the "extent to which a plaintiff succeeds in showing that an employer's discrimination, and not the employee's own misconduct, drove the employment decision." *Akrabawi*, 152 F.3d at 696 (quoting *Sheppard*, 88 F.3d at 1339). This factor is neutral.

Plaintiff contends that there was no inappropriate or negative behavior by Plaintiff. Defendant, on the other hand, argues that it exhibits no widespread pattern of discrimination. The Court agrees with both Plaintiff and Defendant. There was no misconduct on the part of Plaintiff. Instead, Defendant presented evidence that Plaintiff did not possess some qualities that Defendant believed its new Chief Human Resources Officer should have. Regardless of Plaintiff's

qualifications, though, this is not a case where Defendant was reacting to significant misconduct on the part of Plaintiff.

Likewise, there was no "widespread or intolerable" animus on the part of Defendant.  It is true that evidence at trial revealed some of Defendant's executives expressly stated they preferred to hire a female as the Chief Human Resources Officer.  However, there was no evidence that Defendant had an ongoing practice of using gender as a factor in selecting candidates, and there was no evidence that this was a practice that had occurred before.  Furthermore, the evidence presented at trial revealed that Defendant nonetheless believed its chosen candidate qualified for the role.  In other words, although gender was a factor, Defendant's hiring choice regarding the Chief Human Resources Officer position was not based solely on gender.  This factor is neutral.

Considering the three *Sheppard* factors, the Court believes that attorneys' fees are appropriate in this case.

### C. It Is Also Appropriate for the Court to Award Fees and Costs Under *Gudenkauf*

Now that the Court has determined attorneys' fees are appropriate after considering the *Sheppard* factors, the Court will consider whether it should award attorneys' fees under *Gudenkauf*.  In *Gudenkauf*, the Tenth Circuit concluded that, in civil rights cases, district courts should award attorneys' fees in all but special circumstances.  *Gudenkauf*, 158 F.3d at 1082.  A mixed-motive case is not a special circumstance that would make an award of fees unjust.  *Id.*  "A verdict for a plaintiff in a mixed motive Title VII case constitutes a victory on a significant legal issue that furthers a public goal."  *Id.* at 1081.  Thus, under *Gudenkauf*, district courts should almost always award attorneys' fees in mixed-motive cases, and a plaintiff's role in helping to end unlawful discrimination in the workplace should be weighed heavily.

Here, the jury determined that gender played a role in Defendant's hiring decision. Plaintiff exposed Defendant's discrimination and, therefore, has helped end unlawful discrimination in the workplace. The current case is not a special circumstance. Accordingly, under *Gudenkauf*, the Court should award Plaintiff attorneys' fees.

### D.  Plaintiff's Overall Success

Under both *Sheppard* and *Gudenkauf*, the Court should also consider the overall success of a plaintiff in determining the appropriate amount of fees to award. Plaintiff's overall success was minimal. Plaintiff brought five claims. The jury, though, only found that Defendant considered an impermissible factor under one of Plaintiff's claims. That is, Plaintiff was unsuccessful on his age discrimination claim, his race discrimination claim, and both of his retaliation claims, but Plaintiff was successful on his gender discrimination claim. Therefore, Plaintiff was successful on one-fifth of his claims. Accordingly, in the exercise of its discretion, the Court concludes that Plaintiff is entitled to one-fifth of the attorneys' fees that the Court finds to be reasonable under the lodestar method. *See Garcia*, 201 F.3d at 679 (upholding the district court's decision to award a quarter of the lodestar amount when the plaintiff was only successful on one of his four claims).

### II.     Plaintiff's Request for Fees and Costs

Now, the Court must determine what reasonable fees and costs are. Courts use the lodestar method to calculate fees. The lodestar method allows courts to evaluate the reasonableness of the fees incurred and discount any repetitive or duplicative fees accrued.

Plaintiff requests that the Court award him two-thirds of his fees and all his costs. According to Plaintiff, he incurred $667,620.00 in fees and $17,772.50 in costs. In total, Plaintiff's attorneys claim to have billed 1,879.7 hours in this case: Rosa R. Orenstein ("Orenstein") billed

14 hours at $450.00 an hour; Jaime Ramon ("Ramon") billed 1,388.4 hours at $425.00 an hour; Nathan M. Nichols ("Nichols") billed 117.6 hours at $300.00 an hour; and an unknown legal assistant billed 359.7 hours at $100.00 an hour (Dkt. #164 at pp. 12, 18).  Plaintiff, however, provides very little documentation to the Court on how his attorneys spent those hours.  To that end, Defendant argues that the information Plaintiff provided is insufficient to support a fee award.

According to Defendant, the Court should deny Plaintiff's request for attorneys' fees because Plaintiff (1) provides no descriptions of the work performed by his attorneys, (2) offers no clarity as to the type of work done by the legal assistant, and (3) does not segregate fees. Likewise, Defendant argues that the Court should deny Plaintiff's request that the Court award him all the costs he incurred because (1) Plaintiff offers no discount on his costs, despite only finding minimal success at trial, (2) the Court already denied both parties costs in this case, and (3) Plaintiff did not provide any evidence to support the amount he requests.

To put it bluntly, Plaintiff made conducting an attorneys' fees analysis difficult.  Overall, the information Plaintiff provided to the Court is lacking.  In support of Plaintiff's request for attorneys' fees and costs, Plaintiff provided the Court with three exhibits.  The first is a sworn Declaration of Jaime Ramon (Dkt. #164 at pp. 10–14).  The second is an unsworn Declaration of Jaime Ramon (Dkt. #164 at pp. 15–17).  And the third is a set of charts listing the initials of who was billing and how many hours he or she billed each month (Dkt. #164 at pp. 18–26).  Within all three exhibits, Plaintiff makes little to no attempt to explain the services performed, who performed the services, or when it performed the services.  In fact, at no point does Plaintiff's counsel describe a single task anyone performed in litigating this case.

Moreover, Plaintiff did not address the lodestar calculation (aside from a brief mention of inextricably intertwined claims in its introduction) in his motion.  Instead, the affiant attorney,

14

Ramon, addresses reasonableness to some degree in his affidavit and discusses the *Johnson* factors in an unsworn declaration.  Plaintiff also did not file a reply to Defendant's response, which discusses the reasonableness of Plaintiff's request in detail.  Nonetheless, the Court has determined what reasonable fees in this case are.  Albeit the Court was required to substantially reduce the hours Plaintiff's counsel asserts they expended.

The Court will first address Plaintiff's requests for attorneys' fees and then the Court will address Plaintiff's request for costs.

### A. Reasonable Hours

When conducting a lodestar analysis, a court must determine the reasonable number of hours expended by counsel.  *Black*, 732 F.3d at 502; *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  When assessing the appropriateness of attorneys' fees, courts may only award attorneys' fees for hours reasonably necessary to adequately prosecute the case.  *Id.*; *see also City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986).  Courts may not award attorneys' fees for hours that are "excessive, redundant, or otherwise unnecessary."  *Id*.  The party requesting attorneys' fees bears the burden of documentation for the hours performed and the value of those hours.  *Id.* at 433. With that in mind, a party should provide a district court with sufficient information to allow the court to meaningfully evaluate his or her application for attorneys' fees.  *See id.*   The documentation a party provides must not be vague or incomplete.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

### 1. Descriptions of the Services Performed and Cotemporaneous Billing Statements

As discussed, the party requesting attorneys' fees bears the burden of providing the Court with evidence of the hours it spent performing the services and the value of those hours.  *See id.*  An attorney must explain the services performed during those hours.  *See id.*  To that end, "[i]n

determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Id.* at 325 (citing *Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.")). A district court may reduce the number of hours awarded if the documentation is vague or incomplete. *See Alberti v. Klevenhagen*, 896 F.2d 927, 931 (5th Cir. 1990), *vacated on other grounds*, 903 F.2d 352 (5th Cir. 1990) (refusing to accept incomplete documentation "at face value"); *Leroy v. City of Houston*, 831 F.2d 576, 585–86 (5th Cir. 1987) (finding clear error and abuse of discretion when district court accepted "faulty records" without making reduction); *cf. Hensley*, 461 U.S. at 433 (counseling that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly"). However, "failing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours." *Kellstrom*, 50 F.3d at 325 (citing *Heasley v. Comm'r*, 967 F.2d 116, 123 (5th Cir. 1992)).

The documentation provided by Plaintiff's counsel is vague and undoubtedly incomplete. Plaintiff provided the Court with no contemporaneous billing statements. Moreover, Plaintiff's counsel did not attempt to provide any descriptions of how they spent their time in this case. According to the Fifth Circuit, when there are "[n]o notations, except for the title on the time sheet, [that] indicate the subject matter of the work," then the summaries are considered "at best scanty and lacking in explanatory detail." *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990). For example, in *Von Clark*, the records submitted had only sparse descriptions, such as "telephone call," trial preparation," or "travel to Beaumont to attend deposition." *Id.* at 259 n.6. With only these descriptions, the Fifth Circuit stated that "no proof whatsoever exists that the timesheets

16

submitted by [counsel] accurately reflect the time spent." *Id.* at 259; *see also Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 773 (5th Cir. 1996) (finding entries such as "analyzing documents" and "phone interviews" to be "woefully inadequate" to support a fee application); *Leroy v. City of Houston*, 906 F.2d 1068, 1080 (1990) (striking entries such as "Work on Brief" and "Review for Oral Argument" because they were "vague as to precisely what was done"); *Hensley*, 461 U.S. at 437 n.12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). According to the Fifth Circuit, it was clear that "these records are not complete, contemporaneous time records kept by each attorney, but are at best merely abstracts." *Von Clark*, 916 F.2d at 259 n.6. In cases such as *Von Clark*, a court may reduce the award or use its discretion to determine a reasonable number of hours that a party's attorney should have been expended in pursuing the claim on which it prevailed. *Id.* at 259.

Here, Plaintiff made no attempt whatsoever to describe to the Court the services it performed for Plaintiff. Indeed, there is no explanation or description of the services performed anywhere in the motion or the exhibits. Plaintiff's counsel did not even provide the sparse descriptions given in *Von Clark*. Instead, Plaintiff's counsel merely provided a monthly synopsis of the total hours billed by each attorney. For example, Plaintiff submitted that Orenstein billed fourteen hours of work on this case. Yet failed to give any description of the tasks Orenstein performed. The same is true for the other two attorneys and the legal assistant.

Moreover, as mentioned, Plaintiff's counsel did not provide any contemporaneous billing statements and, as best the Court can tell, did not contemporaneously construct its fee application. Instead, it appears that Plaintiff hastily put together its fee application and supporting documentation at the end of litigation. Accordingly, the Court must reduce the number of hours

billed by twenty-five percent.  *See Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2020 WL 4583464, at *8 (E.D. Tex. Aug. 10, 2020) (reducing the number of hours billed by twenty percent when the application was unreliable due to lack of information and was likely not contemporaneously constructed); *Kellstrom*, 50 F.3d at 325 (reducing the number of hours billed by 10% when the fees were only supported by documentations of monthly, rather than daily, billing).  The Court concludes such a reduction is appropriate because, as mentioned, Plaintiff's counsel provided *no descriptions* of services performed *whatsoever*.

### 2.  Billing Judgment

In line with Plaintiff's failure to provide any description of the services performed, Plaintiff did not submit evidence that its counsel used billing judgment.  The party seeking fees bears "the burden of showing . . . that the attorneys exercised billing judgment."  *Black*, 732 F.3d at 502 (citing *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006)).  The Fifth Circuit describes billing judgment as "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."  *Saizan*, 448 F.3d at 799.  Any "'excessive, duplicative, or inadequately documented time should be eliminated from an attorney's fee award.'" *Montano v. Orange Cnty., Tex.*, No. 1:13-cv-611, 2015 WL 11110631, at *4 (E.D. Tex. Apr. 24, 2015) (quoting *Leonard v. Louisiana*, No. 07-813, 2013 WL 3558291, at *3 (W.D. La. July 10, 2013)).   "'The hours surviving this vetting process are those reasonably expended on the litigation.'"  *Id.* (quoting *Leonard*, 2013 WL 3558291, at *3).

Here, Plaintiff did not submit any documentation of the hours his attorney charged versus the hours his attorney wrote off as unproductive, excessive, or redundant.  Indeed, the only evidence submitted on the matter of billing judgment is Ramon's unsworn statement that "Counsel has made a diligent effort to avoid any unnecessary duplication of work and time expended" (Dkt. #164, Exhibit 2 at p. 15).  However, attorneys' fees contentions must be supported, at the

very least, by an affidavit.  *See Von Clark v. Butler*, 916 F.2d 255 (5th Cir. 1990).  Even then, attorneys are often required to provide more than their own unsubstantiated statements to support a fee award.  *See id*.  Indeed, "[s]uch an unsupported statement . . . is inadequate to meet applicant's burden of proof."  *Id*.  Because it is Plaintiff's duty to provide the Court with documentation of its billing judgment, and Plaintiff did not, the Court must again discount the hours reasonably expended.  The Court concludes a ten percent reduction is appropriate here. *Domain Prot.*, 2020 WL 4583464, at *8 (reducing reasonable hours by ten percent for failure to document billing judgment); *Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906 (E.D. Tex. 2017) (reducing reasonable hours by twelve percent for failure to document billing judgment).

### 3.  Segregating Claims

A fee applicant "is ordinarily required to segregate fees incurred on claims allowing recovery of fees from those that do not."  *In re Alonzo*, 540 Fed. App'x 370, 373 (5th Cir. 2013) (per curiam).  In certain limited circumstances, however, a fee applicant can avoid this requirement.  Segregation is not required if a fee applicant can show that a recoverable and an unrecoverable claim are sufficiently intertwined such that counsel would have done the same work for which the applicant is requesting attorneys' fees even if the applicant had not brought the unrecoverable claim.  *Id*. ("Yet interrelated or intertwined facts are not enough to trigger the exception; 'it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.'").  However, the party seeking to invoke this exception has the burden of demonstrating that it applies, *Tow v. Speer*, No. H-11-3700, 2015 WL 1058080, at *16 (S.D. Tex. Mar. 10, 2015), and must do more than just point out a common set of facts.  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277 (5th Cir. 2007)

("Intertwined facts do not make tort [attorneys'] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.").

Here, Plaintiff did not segregate his fees but claims that the gender and race discrimination claims are inextricably intertwined.  However, Plaintiff made little attempt to demonstrate to the Court that his attorneys would have done the same work for which he is requesting fees even if he had not brought the unrecoverable claims.  Indeed, Plaintiff merely notes in the introduction of his motion that the same facts support both the gender and race discrimination claims.  Nonetheless, the Court is inclined to agree with Plaintiff that the gender and race discrimination causes of action may be inextricably intertwined because both claims stem from a single statement.  Therefore, much of the work for both these claims would likely be the same.  Even still, two of the five claims possibly being intertwined does not save Plaintiff from the pitfalls of failing to segregate the other three.  Plaintiff does not explain why he did not segregate the fees for his other three causes of action—age discrimination under the ADEA and retaliation under both Title VII and the ADEA. All three of which are not within the purview of § 2000e–5(g)(2)(B)(i).

To start, the age discrimination claims and one of the retaliation claims fall under the ADEA, not Title VII; therefore, § 2000e–5(g)(2)(B)(i) of Title VII would not apply.  Secondly, although Plaintiff brought the second retaliation claim under Title VII, the Fifth Circuit has explicitly rejected § 2000e–5(g)(2)(B)(i)'s applicability to retaliation claims.  Indeed, a Plaintiff cannot recover fees associated with the retaliation claims based on § 2000e–5(g)(2)(B)(i).  As the Court has already discussed, under Title VII, Plaintiffs may only recover fees and costs when the plaintiff proves a violation under § 2000e-2(m) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor.  42 U.S.C.

§ 2000e–5(g)(2)(B)(i).  But § 2000e-2(m) does not include retaliation.  Accordingly, in line with statute's language, the Fifth Circuit rejected an award of attorneys' fees and costs under Title VII for retaliation claims.  *Carter v. Luminant Power Servs. Co.*, 714 F.3d 268, 271 (5th Cir. 2013) ("Because we are convinced that § 2000e–2(m) does not encompass retaliation claims, we join several other Circuits in holding that § 2000e–5(g)(2)(B)(i) does not apply to mixed-motive retaliation claims.").  Thus, any legal fees incurred in furtherance of Plaintiff's retaliation claims are unrecoverable.

"A failure to segregate attorney's fees does not mean that the claimant cannot recover any attorney's fees. To the contrary, the amount of unsegregated attorney's fees for the entire case is some evidence of the amount of segregated attorney's fees." *Eagle Suspension, Inc., v. Hellman Worldwide Logistics, Inc.*, No. 3:12-CV-0611, 2015 WL 252442, at *2 (N.D. Tex. Jan. 20, 2015). Nevertheless, it is Plaintiff's duty to provide the Court with an appropriately segregated fee request, so the Court must reduce Plaintiff's hours reasonably expended by twenty percent to account for Plaintiff's failure.  *Domain Prot.*, 2020 WL 4583464, at *8 (reducing reasonable hours by twenty percent for failure to segregate and providing little to no analysis on the inextricably intertwined theory); *see also SCA Promotions, Inc. v. Yahoo! Inc.*, No. 3:14-CV-957-O, 2016 WL 8223206, at *6 (N.D. Tex. Nov. 21, 2016), *R&R adopted*, No. 3:14-CV-00957-O, 2017 WL 514545 (N.D. Tex. Feb. 8, 2017), *aff'd*, No. 17-10239, 2017 WL 11689639 (5th Cir. Nov. 7, 2017) (reducing fees by fifteen percent for failure to segregate).

### 4.  Paralegal

Expenses for paralegals are separately recoverable as part of a prevailing party's award for attorney's fees and expenses, but only to the extent that the paralegal performs work traditionally done by an attorney.  *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982).  Otherwise,

21

paralegal expenses are separately unrecoverable overhead expenses.  *Id.* (citing *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 n.1 (5th Cir. 1980)).

Plaintiff is requesting fees for work done by a legal assistant.  Plaintiff provided the Court with the legal assistant's hourly rate and the number of hours the legal assistant billed but nothing else.  The information concerning the legal assistant and the hours he or she billed is insufficient.  For example, Ramon's affidavit states that he has "personal knowledge of the legal services performed by legal assistants, the hourly rate charged for the services by legal assistants, and the number of hours expended by legal assistants was reasonable and necessary, based upon, among other things, the factors, as applicable" (Dkt. #164, Exhibit 1 at p. 13).  And that the "legal assistant was qualified through education, training, and work experience to perform the legal services rendered in this matter" (Dkt. #164, Exhibit 1 at p. 13).  Yet, Plaintiff provided no breakdown of the work performed by the legal assistant, preventing the Court from determining whether the legal assistant performed legal work and, if so, the nature of the legal work performed.  Indeed, Plaintiff did not provide evidence that any of the work was legal rather than clerical

Plaintiff's failure to provide documentation of the nature of the work done by the legal assistant is fatal to Plaintiff's ability to claim the hours expended by the legal assistant.  *See Allen*, 665 F.2d at 697.  There is no evidence to support the hours expended by the legal assistant.  Therefore, the hours are not recoverable, and a decrease in Plaintiff's calculated hours is appropriate.  The Court will subtract all 359.7 hours billed for work done by the legal assistant.

### B.  Reasonable Hourly Rate

After determining the hours reasonably spent on the litigation, courts must set a reasonable hourly rate.  As with the hours expended, the Court had difficulty determining whether the requested hourly rate is reasonable based on the barebone documentation provided by Plaintiff.

Nonetheless, the Court has concluded that the rate proposed by Plaintiff's counsel is a reasonable hourly rate.

"The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  The relevant market is "the community in which the district court sits." *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. Dist. Cts. Trying Crim. Cases*, 148 F.3d 554, 558 (5th Cir. 1998)).  Typically, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there.  *Id.* at 368.  Importantly, a party requesting attorneys' fees must do more than provide an affidavit from its own attorney to support the proposed hourly rate.  *See Medina v. Fed. Janitorial Servs., Inc.*, No. EP-12-CV-350, 2013 WL 8480147, at *6 (W.D. Tex. Sept. 24, 2013).  If a Plaintiff fails to provide adequate evidence of a reasonable hourly rate, the Court may rely on its prior decisions and decisions of courts within the relevant community.  *Id.* ("Because Plaintiff failed to provide evidence other than an affidavit from his attorney, the Court will rely on its prior decisions and the decisions of courts within [its own division] to determine the hourly rate.").  To be sure, "[t]he trial court itself is also considered an expert as to the reasonableness of attorney's fees and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees." *Crane v. Rave Rest. Group, Inc.*, No. 4:20-CV-13, 2022 WL 403291, at *4 (E.D. Tex. Feb. 9, 2022) (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)).

Orenstein's hourly rate is $450.00; Ramon's hourly rate is $425.00; Nichols hourly rate is $300.00; and the unknown legal assistant's hourly rate is $100.00. The only biographical

information provided to the Court was that of the affiant attorney, Ramon.  Indeed, Plaintiff did not provide information on the qualifications or experience of the other two attorneys who billed hours in this case.  Plaintiff provided no information by which the Court can judge the experience of Orenstein or Nichols; Plaintiff submitted nothing about their education, the number of years they have been practicing, or their experience in employment litigation or generally.  However, Defendant points out that Orenstein was not the lead attorney on this case, Ramon was, and she does not practice employment law.  Defendant directed the Court to Orenstein's attorney page on the Orenstein Law Group website, which indicates that Orenstein is a partner who "has deep experience and a successful record in representing clients in bankruptcy (creditor and debtor), banking, secured transactions, and commercial law matters."  Notably, it does not appear that Orenstein has any experience in employment litigation.

Plaintiff also failed to submit information that would inform the Court what the average or common hourly rate for attorneys in this field is.  Instead, Ramon stated in his affidavit that "it is [his] opinion that Orenstein Law Group, P.C.'s usual hourly rates over the course of this Cause are reasonable and necessary.  They are, in [his] opinion, lower than the hourly rate for similar experience by lawyers in most firms" (Dkt. #164 at p. 12).  As the Court already pointed out, "[s]uch an unsupported statement . . . is inadequate to meet applicant's burden of proof."  *Von Clark*, 916 F.2d at 255; *see also Stanton*, 2020 WL 5269439, at *6.

Plaintiff failed to submit information beyond his attorney's own affidavit of the prevailing market rate in the community.  Accordingly, the Court will use prior opinions as guidance in determining an appropriate hourly rate.

In recent cases, the Court has generally determined the prevailing market rate ranges from $450.00 to $862.00.  *See, e.g., Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-

CV-02355, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (finding a range from $537.00 to $862.00 per hour to be a reasonable rate to charge for attorneys); *see also Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906–07 (E.D. Tex. 2017) (finding a range from $450.00 to $860.00 per hour to be a reasonable rate to charge for attorneys); *Natour v. Bank of Am., N.A.*, No. 4:21-CV-00331, 2022 WL 10177665, at *7 (E.D. Tex. Oct. 17, 2022) (finding a range from $245.00 to $595.00 per hour to be a reasonable rate to charge for attorneys); *Crane v. Rave Rest. Group, Inc.*, No. 4:20-CV-13-ALM, 2022 WL 403291, at *6 (E.D. Tex. Feb. 9, 2022) (finding a blended rate of $500.00 to be a reasonable rate to charge for attorneys); *Cunningham v. Kitchen Collection, LLC*, No. 4:17-CV-770, 2019 WL 2865080, at *5 (E.D. Tex. July 3, 2019) (finding a rate of up to $600.00 a reasonable rate to charge for attorneys).  Here, the highest rate Plaintiff's counsel charged was $450.00, the low end of the range in recent cases.

Given that Plaintiff's proposed rates are well within or below the range of rates the Court has previously determined were reasonable, the Court agrees with Plaintiff that the hourly rates proposed by Plaintiff are reasonable.

### C.  The *Johnson* Factors

"After determining the lodestar amount, the district court may adjust the lodestar up or down in accordance with the relevant Johnson factors not already included in the lodestar."  *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).  The Court must be careful when applying the Johnson factors to ensure it does "not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments."  *Id.*  "Four of the *Johnson* factors—the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation—are presumably fully reflected in the lodestar amount."  *Id.*  If a factor is presumably considered in the lodestar amount,

the Court may still make an adjustment based on that factor; however, only "in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings." *Id.*

The Court already considered most of the *Johnson* factors in its lodestar calculation.  Of the remaining *Johnson* factors, none require the Court to adjust the lodestar amount upward or downward.  Accordingly, there is no need to make any adjustments.

### D.  Plaintiff's Request for Appellate Fees

Although not mentioned in Plaintiff's motion, in Ramon's sworn declaration, he requests conditional attorneys' fee if the case is appealed:

> In the event of an appeal in this Cause, should the same be necessary, reasonable and necessary attorneys' fees for post-trial motions at the trial court level are in the amount of $15,000.00, appellate fees to the Fifth Circuit Court of Appeals in the amount of $10,000.00, appellate fees for an application for writ of certiorari to the United States Supreme Court in the amount of $25,000.00, and additional $15,000.00 if a writ is granted.

(Dkt. #164, Exhibit 1, at p. 12).  The issue of appellate attorney's fees is a matter for the district court on remand following the resolution of the underlying appeal.  *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003); *Roberts v. Brinkerhoff Inspection, Inc.*, 855 Fed. App'x 222, 222 (5th Cir. 2021) (per curiam).  Accordingly, Plaintiff's request for conditional appellate fees is denied at this time.

### E.  Attorneys' Fees Calculation

Plaintiff submits that his attorneys expended 1,879.7 hours were while litigating this case.  Additionally, Plaintiff submits that Orenstein's hourly rate is $450.00, Ramon's hourly rate is $425.00, and Nichols hourly rate is $300.00.  But Plaintiff failed to present adequate evidence in support of its request for attorneys' fees.  Accordingly, the Court was forced to repeatedly discount the hours asserted: (1) twenty-five percent reduction for lack of descriptions and contemporaneous billing statements; (2) ten percent reduction for failure to exercise billing judgment; (3) twenty

26

percent reduction for failure to segregate; and (4) a reduction of all the hours credited to the legal assistant.  That is, Plaintiff's 1,879.7 billed hours were cut down to 684 billed hours.  The Court did, however, agree with Plaintiff's proposed hourly rates.  Thus, the calculation is as follows:

|  | Initial Hours | Percent Reduced | Reduced Hours | Rate | Reduced Hours X Rate |
|---|---|---|---|---|---|
| Orenstein | 14 | 55% | 6.3 | $450.00 | $2,835.00 |
| Ramon | 1388.4 | 55% | 624.78 | $425.00 | $265,531.50 |
| Nichols | 117.6 | 55% | 52.92 | $300.00 | $15,876.00 |
|  |  |  |  |  | $284,242.50 |

After adding these amounts together, a reasonable award of attorneys' fees under the lodestar method is $284,242.50.

The Court concluded that Plaintiff is entitled to one-fifth of the lodestar amount under Title VII.  Considering the amount of reasonable attorneys' fee calculated under the lodestar method, and the reduction under Title VII due to Plaintiff's minimal success, the Court awards Plaintiff $56,848.50 in attorneys' fees.

## F.  Reasonable Costs

Finally, the same problems that plague Plaintiff's request for attorneys' fees also plague Plaintiff's request for costs.  Indeed, Plaintiff does not attempt to itemize costs or segregate the costs based on the causes of action.  Nor does Plaintiff provide the Court with receipts or invoices to substantiate its claim for costs.  Rather, Plaintiff gives the total amount supposedly expended in costs and fees and then makes the overarching claim that the amount is reasonably necessary.

The party seeking costs bears the burden of supporting its request with evidence documenting the costs incurred and proof, when applicable, that a certain item was necessarily obtained for use in the case.  *See Fogleman v. Arabian Am. Oil Co.*, 920 F.2d 278, 285–86 (5th

27

Cir. 1991); *Casarez v. Val Verde Cnty*, 27 F. Supp. 2d 749, 751 (W.D. Tex. 1998). Although there is a presumption that courts should award costs, a court has discretion to deny costs when a party does not meet its burden to show what costs are recoverable. Undoubtedly, "'[t]he burden is on the party seeking recovery of costs to show what portion of a particular invoice is recoverable.'" *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 1000864 (N.D. Tex. Mar. 6, 2015) (quoting *Halliburton Energy Servs., Inc. v. M–I, LLC*, 244 F.R.D. 369, 372 (E.D. Tex. 2007). Parties that fail to meet that burden risk a court disallowing all costs. *Id.*

Plaintiff did not meet its burden, and the request for costs is insufficient. Plaintiff did not provide a single invoice or receipt as proof of the costs incurred. In fact, Plaintiff did not do so much as inform the Court what the costs it incurred were. Without any evidence whatsoever to support the costs, the Court must deny Plaintiff's request for costs.

## CONCLUSION

It is therefore **ORDERED** Plaintiff's Motion to Alter or Amend Judgment, Application Requesting Allowance of Attorneys' Fees and Costs and, in the Alternative, Motion for Reconsideration of Final Judgment (Dkt. #164) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that, insofar as the Court's Final Judgment on the Verdict (Dkt. #163) denied all relief not previously granted, the Plaintiff's motion requesting reconsideration is **GRANTED** for the reasons stated in this Order.

It is further **ORDERED** that Plaintiff is awarded $56,848.50 in attorneys' fees and no costs.

**IT IS SO ORDERED.**
 **SIGNED this 10th day of January, 2023.**

28

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE